UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANNA BUNTJER,
Plaintiff,

v.

ADOBE, INC., et al.,
Defendants.

Case No. 26-cv-02019-PCP

**ORDER GRANTING ADOBE'S MOTION TO STRIKE OR NARROW DEFECTIVE CLASS ALLEGATIONS AND DISMISS OR STRIKE IMPROPER REQUESTS FOR RELIEF AND GRANTING TALENTBURST'S MOTION TO DISMISS**

Dkt. Nos. 15, 20

In this putative class action, plaintiff Anna Buntjer asserts individual and class claims against defendants Adobe, Inc. and TalentBurst, Inc. under the Equal Pay Act of 1963, Title VII of the Civil Rights Act of 1964 (Title VII), and California's Unfair Competition Law (UCL). Adobe now moves (1) to strike or narrow Buntjer's class allegations under Title VII and the UCL; (2) to dismiss her claims for prospective relief and nonrestitutionary disgorgement for lack of standing; and (3) to strike the complaint's singular reference to "Edward Jones" in the prayer for relief.[1] TalentBurst separately moves to dismiss Buntjer's claims against it for lack of personal jurisdiction or, in the alternative, to strike certain class allegations as deficient, and to dismiss certain of her claims on the merits. For the reasons that follow, the Court grants both motions.

**BACKGROUND**

TalentBurst, a temporary staffing agency, is incorporated in Delaware and has its principal place of business in Delaware. Hammond Decl., Dkt. No. 27-1, ¶ 2. TalentBurst hired Buntjer, a resident of Utah, to work for Adobe for a one-year period from June 2024 to June 2025.

[1] Adobe does not seek dismissal of plaintiff's individual or Equal Play Act claims.

United States District Court
Northern District of California

FAC, Dkt. No. 14, ¶ 14; Ex. A to Reis Decl., Dkt. No. 15-1, at 7. Adobe is a California corporation that maintains offices in San Jose, California and Lehi, Utah. Buntjer Decl., Dkt. No. 24-2, ¶ 2–3; Hammond Decl., Dkt. No. 27-1, ¶¶ 9–10, 12.

Buntjer's employment at Adobe ended in June 2025. In August 2025, she filed charges of discrimination against both TalentBurst and Adobe with the Equal Employment Opportunity Commission (EEOC) and the Utah Anti-Discrimination and Labor Division. The charges, which were identical, centered on alleged (1) sexual and religious harassment by Buntjer's supervisor, (2) Adobe paying Buntjer less than a comparable male colleague, and (3) retaliation after Buntjer reported the harassment and disparate pay. In full, Buntjer's EEOC charges alleged the following:

> I was hired on June 10, 2024, as SMB licensing. I am a female and I am LDS and I have been subjected to harassment, discrimination, and retaliation.
>
> From August 2024 through March 2025, my supervisor made comments about my physical appearance, how beautiful I am, how I should wear my hair, and how my eyelashes should appear. The supervisor hugged me without my consent. The supervisor made frequent references to the LDS faith and said he would pray for me, that I can ask him for blessings, and that I could come to him if I needed religious guidance or prayers.
>
> I complained about the supervisors conduct orally and in writing to my employers. I also complained that I was being paid less than my male coworker for the same or substantially similar work.
>
> From February through April 2025, I was subjected to retaliation when my supervisor delayed approving my hours to delay my paycheck. Also, several coworkers engaged in hostile behaviors directed at me. Those coworkers were confrontational, rude, and disrespectful when they interacted with me.
>
> On or about April 12, 2025, my employer notified me that its investigation into my complaints was complete, and that my allegations regarding the supervisor's conduct were substantiated. On May 20, 2025, my employer notified me that it would not be renewing my contract or extending on offer of continued employment.
>
> June 10, 2025, was my final day working for my employer.
>
> I believe I have been harassed and discriminated against based on my sex and religion, and subjected to retaliation. I believe the acts of my employer are in violation of Title VII of the Civil Rights Act of 1964,

> the Equal Pay Act of 1963, and the Utah Antidiscrimination Act of 1965, all as amended.

Ex. A to Reis Decl., Dkt. No. 15-1, at 7; Ex. A to Albert Decl., Dkt. No. 20-1, at 10. Buntjer received right-to-sue letters in March 2026 and commenced this action soon thereafter. She filed her first amended complaint in June 2026.

Buntjer makes similar allegations in her first amended complaint. Buntjer alleges that she "was hired by Talent[B]urst" and "performed work for Adobe … as a Scale Licensing Lead in America," before being "promoted to SMB Licensing Lead in America." FAC, Dkt. No. 12, ¶ 20. During her employment, she allegedly "was informed by her manager Maurice D. that she was getting paid less than her male counterpart for substantially equal work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions." *Id.* ¶ 21. The first amended complaint also alleges that Buntjer's supervisor created a sexually and religiously hostile environment, including by "repeatedly and pervasively ma[king] comments … about her physical appearance," "physically kiss[ing] [Buntjer] without her consent," telling Buntjer "that [she] should ask him for blessing and … could come to him for religious guidance or prayers," and making "disparaging remarks about her family in the context of instructing her to seek spiritual guidance from him." *Id.* ¶¶ 34–37. Buntjer alleges that, when she reported this conduct, she "faced retaliation" including "delays in her pay, a hostile work environment," and termination. *Id.* ¶¶ 38–39. Based on these allegations, Buntjer asserts individual claims against defendants under the Equal Pay Act, Title VII, and California's Unfair Competition Law (UCL).

In addition to these individualized allegations, Buntjer alleges systemic gender-based discrimination against female employees of Adobe and TalentBurst. These allegations include allegations that defendants "maintain a centrally determined and uniformly applied policy and/or practice of paying its female employees less than male employees for equal similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions," *id.* ¶ 23; "have paid women including the named Plaintiff, less than men in the same job position and level, even though under Defendants' Classification system, persons in the same

job positions and level performed equal similar work," *id.* ¶ 24; "have awarded benefits disproportionately to male employees over women employees," *id.* ¶ 30; and "employ common, unvalidated, unreliable, and discriminatory procedures for selecting employees for promotion," *id.* ¶ 32. Buntjer's first amended complaint does not make any specific factual allegations to support her assertions aside from the factual allegations that support her individual claims.

Buntjer asserts claims on behalf of three groups. First, for Equal Pay Act purposes, she seeks to represent a collective consisting of "[a]ll current and former female employees who were paid less than male employees doing the same or similar work from three years prior to the filing of the initial Complaint to the present." *Id.* ¶ 42. Second, for Title VII purposes, she seeks to represent a nationwide class consisting of "[f]emale employees who work or worked for Defendants and who were subjected to systemic discrimination by Defendants due to their gender or sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq." *Id.* ¶ 49. Third, for UCL purposes, she seeks to represent a class of "[a]ll women employed by who worked for Defendants at any time during the time period between beginning four years before the filing of the initial complaint in this Action through the date of trial in this Action." *Id.* ¶ 50.

Defendants now move to dismiss the claims against TalentBurst for lack of personal jurisdiction and to strike, narrow, and dismiss various of the class allegations against Adobe.

**LEGAL STANDARD**

If a complaint does not establish a federal court's personal jurisdiction over a defendant, it may be dismissed under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where a Rule 12(b)(2) "motion is based on written materials rather than an evidentiary hearing," the plaintiff need make only a "prima facie showing of jurisdictional facts to withstand a motion to dismiss." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). The Court must take uncontroverted allegations in the complaint as true unless they are contradicted by affidavit. *Id.*

District courts have broad discretion to manage the class certification process. *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 962 (9th Cir. 2020). District courts "do[] not abuse

[their] discretion by actively managing the pre-certification process," and may even "deny[] pre-certification discovery entirely." *Id.* at 963.

## ANALYSIS

### I. Plaintiff fails to meet her burden of demonstrating that this Court can exercise personal jurisdiction over TalentBurst.

TalentBurst moves to dismiss Buntjer's claims against it for lack of personal jurisdiction. "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Id.* (citing Fed. R. Civ. P. 4(k)(1)(A)). Because California's long-arm statute authorizes state courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause, *Schwarzenegger*, 374 F.3d at 800, "the statutory question here collapses into the constitutional one: [The] [C]ourt ... can exercise jurisdiction over [Buntjer]'s claims against [TalentBurst] if doing so is consistent with the Fourteenth Amendment." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023).

"The Supreme Court's due process precedents have 'recognized two kinds of personal jurisdiction: general and specific jurisdiction." *Id.* (citation modified) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). Buntjer does not argue that TalentBurst is subject to general jurisdiction in California. Such an argument would fail because "[a] state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporation, that is generally "its place of incorporation and principal place of business," *id.*, neither of which are California for TalentBurst.

Instead, Buntjer argues that TalentBurst is subject to specific jurisdiction in California. While "[g]eneral personal jurisdiction permits a court to hear any and all claims brought against a defendant concerning any of the defendant's activity anywhere in the world," *Yamashita*, 62 F.4th at 503 (citation modified), specific jurisdiction subjects a party to suit "only as to a narrower class of claims," *Ford Motor Co.*, 592 U.S. at 359. "For an exercise of specific personal jurisdiction, the due process clause requires, inter alia, that the defendant [1] 'take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State,' and [2]

United States District Court
Northern District of California

that the plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Yamashita*, 62 F.4th at 503 (quoting *Ford*, 592 U.S. at 359).

In this case, it is undisputed that TalentBurst purposefully availed itself of the laws of California by, at a minimum, advertising dozens of open positions in California. *See* Zinovyev Decl., Dkt. No. 24-1, ¶ 3. But Buntjer has not satisfied her burden of showing that her claims "arise out of or relate to" TalentBurst's contact with that forum. There is at most a tenuous connection between her individual claims and TalentBurst's forum contacts.

Buntjer does not live in California and she did not see TalentBurst's job listing while in California. Her sole basis for asserting personal jurisdiction over TalentBurst is that the company assigned her to a remote job that reported to a California office. *See* Buntjer Decl., Dkt. No. 24-2, ¶ 3 (attesting that "[t]he address of the office [she] was assigned to work for was 345 Park Ave, San Jose, California, 95110"). Yet she offers no documentary evidence to support that assertion, and the other evidence in the record contradicts it. Buntjer's pre-employment communications with TalentBurst show that a recruiter contacted her about a hybrid role with Adobe requiring three days per week "onsite" in either "San Jose, CA or Lehi, UT." Ex. B to Hammond Decl., Dkt. No. 27-1, at 20. Buntjer responded that she "d[id]n't live in California so it would have to be 100% remote." *Id.* at 19. TalentBurst then reiterated that "[t]his position is open for Lehi, UT location also" and asked Buntjer if she was "available for Lehi, UT location," to which Buntjer replied, "Yes I can go to the office in Lehi." *Id.* As a result, Buntjer's offer of employment and employee agreement identified her assignment location with Adobe as "Hybrid Role … 3 days in Lehi UT," without any mention of San José or California. Ex. A to Hammond Decl., Dkt. No. 27-1, at 7.

In addition, Buntjer "declare[d] and affirm[ed] under criminal penalty" in her charge of discrimination against Adobe that the "place of [the] alleged violation" was "Lehi, UT," and that relevant Adobe office was located in Lehi, Utah. Ex. A to Reis Decl., Dkt. No. 15-1, at 7–8. And when Buntjer filed her charge of discrimination against Adobe, she listed Adobe's address as the one in Lehi, not the one in San José. See Ex. A to Reis Decl., Dkt. No. 15-1, at 6–8.

To be certain, the position she accepted was advertised in California and other states. *See*

Zinovyev Decl., Dkt. No. 24-1, ¶ 3. But due process requires more. "'The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state,' even if the defendant is 'aware[] that the stream of commerce may or will sweep the product into the forum state.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th at 503 (9th Cir. 2023) (alteration in original) (quoting *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)). Merely advertising a job position online such that it might be viewed by an applicant in California (or an applicant in any other state) is insufficient to create specific personal jurisdiction where the plaintiff's acceptance of the position did not result from the California advertisement and the plaintiff herself did not accept a position in California.

Accordingly, Buntjer has not met her burden of demonstrating that this Court can exercise personal jurisdiction over TalentBurst. TalentBurst's motion to dismiss under Rule 12(b)(2) is therefore granted. Because this defect could theoretically be cured through amendment, the dismissal is without prejudice and with leave to amend. Bunter should do so, however, only if she can truthfully plead a basis for this Court's jurisdiction over TalentBurst.

## II. Plaintiff's class allegations are deficient.

### a. This Court has authority to strike class allegations at the pleading stage under Federal Rule of Civil Procedure 23.

Adobe asks the Court to strike or narrow the Title VII and UCL class allegations from the first amended complaint because Buntjer fails to adequately plead certain requirements to maintain a class action under Federal Rule of Civil Procedure 23.

Adobe does not argue that the Court can strike or dismiss Buntjer's class allegations under Rule 12(b)(6). That is for a good reason: "[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). Instead, Adobe relies primarily on Rule 12(f), which provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

District courts have at times invoked Rule 12(f) to strike class allegations that fail on their face to satisfy Rule 23's requirements—for example, where the complaint does not "allege some

specific commonality and typicality among class members." *Dodd-Owens v. Kyphon, Inc.*, No. 06-CV-3988-JF, 2007 WL 3010560, at *4 (N.D. Cal. Oct. 12, 2007); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (striking class allegations from complaint as "impertinent" under Rule 12(f) where the complaint failed to plead facts to show predominance under Rule 23(b)(3)). But Rule 12(f) is "a poor fit for that." *Comin v. Int'l Bus. Machines Corp.*, No. 19-CV-07261-JD, 2021 WL 463431, at *4 (N.D. Cal. Feb. 9, 2021) (citation modified). That is because Rule 12(f)'s text empowers courts to strike only the specified categories of material. "This plain language does not apply in an obvious way to a dispute over whether a putative class … is defined too broadly" or otherwise satisfies the prerequisites of Rule 23(a), "which is hardly the stuff of scandal or impertinence." *Id.* (citation modified). Although class allegations and claims in a complaint might not be meritorious, that does not make them immaterial, impertinent, scandalous, or redundant. *See Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1089 (9th Cir. 2025) (explaining that matter is "immaterial" only when it "has no essential or important relationship to the claim for relief" and is "impertinent" only if it "do[es] not pertain, and [is] not necessary, to the issues in question"). The Ninth Circuit has warned against using Rule 12(f) to strike material outside of these categories or to dispose of claims on the merits. *See id.* (holding that a district court abused its discretion by striking material under Rule 12(f) that did not fall into one of the enumerated categories where the strike "effectively dismissed [a plaintiff]'s claim"). Accordingly, Rule 12(f) is an improper vehicle for Adobe's motion.

Adobe alternatively argues that the Court can strike defective class allegations at the pleading stage pursuant to Rule 23(d)(1)(D), which provides that "[i]n conducting an action under [Rule 23], the court may issue orders that … require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Although some district courts have suggested that this provision is a standalone grant of authority to conduct a Rule 23 analysis at the pleading stage, *see, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014), Rule 23's text, the committee notes, and Ninth Circuit precedent all indicate that Rule 23(d)(1)(D) authorizes a Court to require amendment of the pleadings only once the Court has ruled on class certification "at an early

practicable time" pursuant to Rule 23(c)(1)(a).

Beginning with the text, Adobe focuses solely on Rule 23(d)(1)(D)'s authorization for a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Read alone, this might appear to grant courts broad authority to strike class allegations from a complaint at any time. But the surrounding provisions provide important context. In addition to allowing courts to require amendment of pleadings, Rule 23(d)(1) provides that a court may issue three other types of orders "in conducting an action under [Rule 23]." Fed. R. Civ. P. 23(d)(1). Crucially, the other enumerated categories are orders that would almost always be issued *after* a ruling on class certification. The court may "prescribe measures to prevent undue repetition or complication in presenting evidence or argument," Fed. R. Civ. P. 23(d)(1)(A), which would be necessary only if plaintiffs were presenting evidence and argument concerning many individuals in the same action. The court may "require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members" of certain information. Fed. R. Civ. P. 23(d)(1)(B). This again presumes that there are class members—*i.e.*, that a class has been certified. And the court may "impose conditions on the representative parties or on intervenors," Fed. R. Civ. P. 23(d)(1)(C), which likewise presumes that a class has been certified. The text of Rule 23(d)(1) as a whole therefore suggests that it concerns orders issued after the Court's decision on class certification.

Correspondingly, the committee notes for Rule 23(d)(1)(D) and its predecessors all contemplate that orders issued under that provision will be issued after a decision on class certification. Prior to the current iteration of Rule 23(d)(1)(D), then-Rule 23(d)(4) provided that "[i]n the conduct of actions to which this rule applies, the court may make appropriate orders … requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly." The 1966 advisory committee note for Rule 23(c)(1) specified that when a court made "[a] negative determination" under that provision as to "whether an action brought as a class action is to be so maintained," the "action should be stripped of its character as a class action. See subdivision (d)(4)." In other words, the 1966 committee notes contemplated that a court would use its authority to require amendment of a

class-action complaint to eliminate class allegations after a court had decided not to certify a class under Rule 23(c)(1). And that was the provision's only contemplated purpose—the 1966 committee note for subdivision (d)(4) simply referred back to the note on (c)(1), without discussing any other use for orders to amend pleadings.

Finally, the Ninth Circuit has discussed Rule 23(d)(1)(D) as operating concurrently with or after a ruling on class certification. For example, in *Davidscon v. O'Reilley Auto Enterprises, LLC*, the Ninth Circuit explained that a district court's decision to strike class allegations under Rule 23(d)(1)(D) following denial of a motion for class certification determines whether a plaintiff may renew their motion for class certification at a later stage of the case. *See* 968 F.3d 955, 964 (9th Cir. 2020) ("By striking the class allegations, the district court prevented the plaintiff from renewing the motion for class certification."); *id.* at 964 n.7 ("If the district court does not strike the class allegations, parties may move a district court to alter or amend an order granting or denying class certification at any time 'before final judgment.'" (quoting Fed. R. Civ. P. 23(c)(1)(C))). And in *Kamm v. California City Development Co.*, the Ninth Circuit affirmed a district court order that simultaneously denied class certification pursuant to Rule 23(c)(1) and struck class allegations from the plaintiffs' complaint pursuant to then-Rule 23(d)(4) (the predecessor of current Rule 23(d)(1)(D)). 509 F.2d 205, 206, 213 (9th Cir. 1975).

Accordingly, Rule 23(d)(1)(D) is not standalone grant of authority to strike class allegations at any time. Instead, Rule 23(d)(1)(D) authorizes a court to strike class allegations only after denying class certification (or certifying a narrower class than the one proposed in the complaint) under Rule 23(c)(1).

Nonetheless, Adobe is right that the Court can strike the class allegations at this stage of the case. It is well-established that "[d]istrict courts have broad discretion to control the class certification process." *Davidson*, 968 F.3d at 962 (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). And in combination, Rule 23(c)(1)(A) and Rule 23(d)(1)(D) will sometimes allow a court to strike class allegations at the pleading stage. Rule 23(c)(1)(A) specifies that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

District courts "do[] not abuse [their] discretion by actively managing the pre-certification process," and may even "deny[] pre-certification discovery entirely." *Davidson*, 968 F.3d at 963. Although discovery is often necessary, and it is therefore usually "advisable … to afford the litigants an opportunity to present evidence at to whether a class action [i]s maintainable," class certification may "properly [be] denied without discovery where … plaintiffs [can]not make a prima facie showing of Rule 23's prerequisites or that discovery measures [ar]e 'likely to produce persuasive information substantiating the class allegations.'" *Vinole*, 571 F.3d at 942 (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)). *See also Kamm*, 509 F.2d at 209-210 (affirming the denial of class certification before the completion of discovery).

For those reasons, the Court concludes that it may strike class allegations from a complaint pursuant to Rule 23(d)(1)(D) only after it concludes under Rule 23(c)(1)(A) that a class cannot be certified, but that courts have the discretion to undertake the latter analysis on the basis of the pleadings if the plaintiff's complaint fails to allege facts sufficient to make a *prima facie* showing that she can satisfy Rule 23 or that discovery may substantiate the class allegations. *See In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 498 (W.D. Pa. 2019).

**b. Plaintiff's complaint does not make a *prima facie* showing that the proposed classes can satisfy Rule 23 or that discovery will substantiate the class allegations.**

Applying this standard, it is clear that Buntjer's proposed Title VII and UCL class definitions are defective.

To start, Buntjer's proposed Title VII class definition is defective on its face because it relies on an impermissible "fail safe" definition. As the Ninth Circuit has explained, "[a] court may not … create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Here, Buntjer's proposed Title VII class is a textbook "fail safe" class defined by the merits of individual class members' claims. The class includes only

those female employees "who were subjected to systemic discrimination by [d]efendants due to their gender or sex in violation of Title VII." FAC, Dkt. No. 12 ¶ 49.

In her opposition to Adobe's motion, Buntjer argues that it would be premature to strike her class allegations and deny certification because she could modify her class definition after discovery. To be sure, the problem of overbroad or fail-safe class definitions "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Olean*, 31 F.4th at 669 n.14 (quoting *Messner*, 669 F.3d at 825). Buntjer, however, offers no explanation as to how she might cure her defective fail-safe class definition with the benefit of discovery. Absent such an explanation, Buntjer has not made the requisite *prima facie* showing that she will ultimately be able to satisfy the requirements for certification of the Title VII class, or that Adobe should be subjected to burdensome class discovery. *See Nichols v. eHealthInsurance Servs., Inc.*, No. 23-CV-06720-EKL, 2025 WL 689721, at *5 (N.D. Cal. Mar. 3, 2025) (explaining that "it is appropriate to strike [class allegations] at the pleading stage" where a complaint's proposed class definition is "fail-safe … and defective as a matter of law" and collecting other cases doing the same). To the extent Buntjer's proposed class "may be redefined to resolve the fail-safe issue," that might provide a reason to grant leave to amend in the future, but it does not provide a basis for denying Adobe's motion to strike the class allegations at this time. *See Nichols*, 2025 WL 689721, at *5 (citation modified).

Buntjer's proposed UCL class, which covers "[a]ll women employed by Adobe," suffers from a different defect: overbreadth. FAC, Dkt. No. 12 ¶ 50. This Court is required to "ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016)). The proposed UCL class includes all women employed by Adobe during the relevant period without any geographic limitation. FAC, Dkt. No. 12 ¶ 50. But the California Supreme Court has squarely held that "the presumption against extraterritoriality applies to the UCL in full force" and that the UCL therefore does not operate "with respect to occurrences outside the state." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). That is

why *Sullivan* held that a California corporation's decision to adopt a policy that resulted in its failure to pay out-of-state plaintiffs overtime due under the Fair Labor Standards Act (FLSA) could not serve as the basis for a UCL claim. *Id.* at 1208. Even though the decision to adopt the policy occurred in California, relief was barred because the ultimate FLSA violation occurred outside of the state. *Id.*

Here, Buntjer's proposed UCL class definition, which would include Adobe employees nationwide, necessarily means that individualized questions will arise as to whether the "occurrence" giving rise to each of their claims—that is, the allegedly unfair or unlawful business practice giving rise to their claims—took place in California. The answer to that individualized question will be dispositive for many class members' claims. As is clear from the discussion above concerning the Adobe office for which Buntjer worked, whether alleged discrimination against an individual occurred in California can be a fact-intensive one requiring significant individualized proof. Those individualized inquiries necessarily destroy predominance.

In her opposition to Adobe's motion, Buntjer's only argument to the contrary is once again that she could alter the class definition in the future. But she again fails to specify how she might do so. For those reasons, Buntjer's complaint fails to allege facts sufficient to make out a *prima facie* showing that she can satisfy Rule 23 or that discovery is likely to substantiate the class allegations. Accordingly, the Court grants Adobe's motion to deny certification under Rule 23(c)(1)(a) and to strike the class allegations under Rule 23(d)(1)(D). Because this defect could be cured through amendment, the dismissal is without prejudice.[2]

**III. Adobe's remaining requests warrant relief.**

**a. Plaintiff does not have standing to seek prospective relief.**

Adobe seeks to dismiss Buntjer's claims for prospective relief for lack of standing. "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). That remains true even in a class action: In such a case, at least one named plaintiff must have standing to pursue each form of

[2] Although Adobe argues that Buntjer's class definitions are deficient in other ways, the Court need not reach those arguments.

United States District Court
Northern District of California

relief sought at the time the complaint is filed. *See Pablo Sequen v. Albarran*, 814 F. Supp. 3d 1005, 1022 (N.D. Cal. 2025).

Accordingly, Buntjer must establish individual standing to pursue prospective relief, which requires her to show "that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized" and is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). She cannot do so because she left her employment at Adobe more than a year ago and professes no intent or desire to return. As a result, the complaint alleges no likelihood of future injury from the alleged policies Buntjer challenges. Buntjer's only argument to the contrary is that the UCL authorizes named plaintiffs to pursue injunctive relief on behalf of a class for the benefit of the public. State law, however, cannot alter Article III's baseline standing requirements. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013); *see also Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020) ("[E]ven if state law authorizes a plaintiff to seek a public injunction on behalf of the general public, that authorization, standing alone, does not confer standing in federal court."), *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022). For those reasons, Adobe's motion to dismiss Buntjer's claims for prospective relief is granted.

**b. Plaintiff cannot seek nonresitutionary disgorgement under the UCL.**

Adobe seeks to strike Buntjer's claim for nonrestitutionary disgorgement under the UCL. "The California Supreme Court has held that, while restitutionary disgorgement may be an available remedy under the UCL, nonrestitutionary disgorgement is not available in a UCL individual action or in a UCL representative action." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (Ct. App. 2015); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003). Instead, "in the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest (or is claiming through someone with an ownership interest)." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005). Accordingly, Adobe's motion to strike Buntjer's claim for nonrestitutionary disgorgement under the UCL is granted.

**c. The complaint's reference is "Edward Jones" is immaterial and impertinent.**

Adobe seeks to strike the complaint's reference to "Edward Jones' unlawful conduct" in the prayer for relief. Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Given that Edward Jones is not a party and is not otherwise involved in this action, Buntjer's reference to that company is "immaterial" and "impertinent." Buntjer makes no argument to the contrary. Accordingly, Adobe's motion to strike the complaint's reference to Edward Jones is granted.

**CONCLUSION**

For the foregoing reasons, defendants' motions are granted with leave to amend. Buntjer must file any amended complaint within 28 days of the filing of this order.

**IT IS SO ORDERED.**

Dated: October 19, 2026

P. Casey Pitts
United States District Judge